United States Court of Appeals,

Fifth Circuit.

No. 93-7317.

SNAP-ON TOOLS CORPORATION, Plaintiff-Appellant,

v.

Barney MASON, Jr. and Sandra Mason, Defendants-Appellees.

April 15, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*] District Judge.

FRANK A. KAUFMAN, District Judge:

On January 24, 1989, Barney Mason entered into a written Dealer Agreement with Snap-On, pursuant to which Mason became a non-exclusive distributor of various Snap-on tools. The Dealer Agreement includes the following provision governing arbitration of disputes between the parties:

> RESOLUTION OF DISPUTES—ARBITRATION. Any controversy or dispute arising out of or relating to this Agreement, or breach thereof including, but not limited to, any claim by the Dealer relating to termination of this Agreement by the Company or any other claim against an employee, officer or director of the Company, shall be submitted to final and binding arbitration as the sole and exclusive remedy for any such controversy or dispute. Any request for arbitration shall be filed in writing within six (6) months following the alleged breach; otherwise, the right to any remedy shall be deemed forever waived and lost.

On September 9, 1992, Barney and his wife, Sandra Mason, served Snap-on with a petition which they had filed in the District Court for Matagorda County, Texas, against Snap-on and four of its present or former employees. Snap-on is a Delaware corporation with its principal place of business in Wisconsin; the four individual-employee defendants and the Masons are all citizens of Texas. In the state court complaint, the Masons allege fraudulent inducement into the dealership contract, fraud during the executory time of the contract, breach of fiduciary duty, and negligent and intentional infliction of emotional distress.

In response to the state court complaint Snap-on and its co-defendants filed a general denial

[*]District Judge of the District of Maryland, sitting by designation.

and a motion to stay proceedings in the state court pending arbitration.[1]  On October 5, 1992, Snap-on sent a written demand for arbitration to the Masons to which the Masons did not respond. On February 12, 1993, Snap-on filed a petition and complaint in the United States District Court for the Southern District of Texas to compel arbitration pursuant to section 4 of the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 4.[2]  Snap-on invoked the diversity jurisdiction of the district court on the basis of complete diversity of citizenship between Snap-on and the Masons.  The four non-diverse co-defendants in the state court action are not plaintiffs in the federal court action and are not parties to the arbitration agreement.

The Masons responded to the petition to compel arbitration with a motion to dismiss.  On April 30, 1993, the district court granted the Masons' motion to dismiss on abstention grounds.[3]  The

---

[1]The Masons have not responded in the state court to Snap-on's motion to stay the state court proceedings.  As of the date of the district court's dismissal, the state court had taken no action with regard to either the complaint or the motion to stay.  Shortly before arguments were heard in this appeal, the state court granted Snap-on's motion for a stay pursuant to § 3 of the FAA and sua sponte ordered Barney Mason to arbitrate.

> 9 U.S.C. § 3 provides:
>
> > If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[2]Section 4 provides in pertinent part:

> > A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

> 9 U.S.C. § 4.

[3]On April 8, 1993, at a Scheduling Conference, the district court directed Snap-on to file a formal motion to compel arbitration by April 30, 1993, and to file an opposition to the motion to dismiss by May 14, 1993.  Snap-on filed its motion to compel arbitration on April 30, 1993, the same day the district court issued its Order granting the Masons' motion to dismiss.  In its Order, the district court expressly forbade the parties from filing anything further in this case in the

district court gave primarily five reasons for its grant of the motion, stating that: (1) in order to determine whether Snap-on is entitled to arbitration the court would have to hold a trial, a course of action it did not want to pursue; (2) there was no reason why Snap-on should not pursue its arbitration claim in the state court; (3) Snap-on had likely filed the motion to compel arbitration because it had missed the thirty day deadline for filing a petition of removal; (4) a plaintiff's choice of forum is entitled to deference; and (5) Snap-on was motivated to file its federal claim because it feared the pro-plaintiff orientation of the state court. Snap-on appeals the district court's dismissal.

"In enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration," *Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.,* 804 F.2d 338, 342 (5th Cir.1986) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). "[C]ongress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983).

In its opinion granting the motion to dismiss, the district court noted the federal policy in favor of arbitration, but declined nonetheless to enforce the arbitration agreement. "We review de novo the district court's decision not to compel arbitration." *Catholic Diocese of Brownsville v. A.G. Edwards & Sons, Inc.,* 919 F.2d 1054, 1056 (5th Cir.1990).

The district court's decision conflicts with the Supreme Court's decision in *Moses H. Cone,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Moses H. Cone,* a hospital filed a state court suit against a construction contractor and an architect raising a number of claims against the contractor arising out of the construction contract between the hospital and the contractor and also contending that the contractor had, by not proceeding timely, lost its right to arbitrate. That contract contained a broadly worded arbitration provision. In the state court suit, the hospital included several claims against an architect who was involved in the construction project, but who was not a party to the disputed contract. The contractor mailed a demand for arbitration to the hospital the same day the hospital's complaint was served upon the contractor. The hospital then obtained an ex parte
district court.

injunction from the state court prohibiting the contractor from taking any steps toward arbitration. After the contractor objected, that stay was dissolved and the contractor filed an action in federal district court seeking an order compelling arbitration under § 4 of the FAA. After the district court stayed the federal proceedings before it, the Fourth Circuit, on appeal by the contractor, reversed and directed the district court to order arbitration. The Supreme Court affirmed.

In so doing, Justice Brennan noted the principles of abstention set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976):

> "Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an *extraordinary and narrow exception* to the duty of a District Court to adjudicate a controversy properly before it. *Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances* where the order to the parties to repair to the State Court would clearly serve an important countervailing interest.' "

*Moses H. Cone,* 460 U.S. at 14, 103 S.Ct. at 936 (emphasis added) (quoting *Colorado,* 424 U.S. at 813, 96 S.Ct. at 1244) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-63, 3 L.Ed.2d 1163 (1959)). *Colorado River* permits federal courts to abstain from exercising their jurisdiction over a case where "considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' " so warrant. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

The considerations discussed in *Colorado River,* and/or in *Moses H. Cone,* include the following: (1) whether the state or federal court has assumed jurisdiction over the res; (2) the inconveniences of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937 (citing *Colorado River,* 424 U.S. at 818-820, 96 S.Ct. at 1246-1248). In *Moses H. Cone* the Supreme Court added an additional factor to the balance—(5) whether a federal policy is involved. *Id.* 460 U.S. at 23, 103 S.Ct. at 941. None of these factors are determinative; rather, they require "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct.

at 937.

Applying these considerations to the facts before it, the Court in *Moses H. Cone* concluded that the exceptional circumstances test of *Colorado River* was not met, and that therefore abstention was inappropriate. *Id.* 460 U.S. at 19, 103 S.Ct. at 938 ("[T]he first two factors mentioned in *Colorado River* are not present here.... The remaining factors—avoidance of piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums—far from supporting the stay, actually counsel against it.").

A careful review of the five factors enunciated in *Moses H. Cone* reveals that the district court should have ordered arbitration in this case.[4] As in *Moses H. Cone,* the first factor, regarding the *res,* has no bearing on the facts of the instant case. The second factor, inconvenience of the federal forum, while a relevant consideration, does not support abstention here. The Masons argue that they will suffer increased costs if the federal court asserts jurisdiction over this case because the state court is closer to their home. They provide no other evidence of inconvenience; both the federal suit and any arbitration will likely occur in Texas, where the Masons reside. More specifically, at least some increased cost appears to have arisen from the Masons' resistance to arbitration and their litigating in two court systems, in a manner hardly in accord with the Supreme Court's approach that, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and

---

[4]The district court's decision cannot be sustained on the basis that determining whether Snap-on is entitled to arbitrate would require a "full-fledged trial," since in FAA suits, the federal courts conduct "an expeditious and summary hearing, with only restricted inquiry into factual issues" bearing on the making of the arbitration agreement. *Moses,* 460 U.S. at 22, 103 S.Ct. at 940.

Further, the district court's position that Snap-on may have been trying to get into federal court after failing timely to remove is not valid. Snap-on could not remove the state court case to federal court in any event because the presence of the co-defendants destroys diversity. 28 U.S.C. §§ 1332, 1441.

Finally, the district court's assumption that Snap-on could have brought its suit in state court may or may not be soundly based. This is because the Supreme Court has expressed reticence on this issue, by noting that although states courts must grant stays pursuant to § 3 of the FAA, "[i]t is less clear ... whether the same is true of an order to compel arbitration under § 4 of the Act." *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942 (noting the "probable inadequacy of the state-court proceeding to protect [the] rights" of the party seeking arbitration).

resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating,* 465 U.S. 1, 7, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984).

The Masons rely most heavily on the third factor, the avoidance of piecemeal litigation. They contend that the tort claims alleged in their state court suit are not arbitrable under the contract and therefore will have to be litigated in a separate forum. Further, they assert that some of the parties will not participate in the arbitration, namely Sandra Mason and the individual co-defendants, none of whom were parties to the arbitration agreement, again resulting in some claims being litigated in another forum.

The terms of the arbitration agreement suggest that, practically speaking, piecemeal litigation may well not result. The arbitration agreement mandates arbitration of claims for breach of the Dealer Agreement as well as for claims "arising out of or relating to" the Dealer Agreement. Because the tort claims all arise out of the business relationship between the opposing parties, it appears that they are arbitrable under the terms of the agreement. The arbitration agreement also provides that Barney Mason must arbitrate not only claims against Snap-on, but also claims against any "employee, officer or director" of Snap-on. Thus Barney Mason's claims against the Snap-on employees may be subject to arbitration, even though those defendants are not parties to the agreement. Further, according to Snap-on, the individual co-defendants may be willing to participate in the arbitration proceeding.

However, even if some piecemeal litigation does result, that sometimes is the inevitable result of a congressional policy strongly favoring arbitration. The Supreme Court in *Moses H. Cone* noted that although arbitration could result in the hospital being forced to resolve its dispute against the architect in a different forum than its dispute against the contractor,

> "That misfortune ... is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."

460 U.S. at 20, 103 S.Ct. at 939.

With regard to the fourth factor, concerning which forum first acquired jurisdiction over the action, the Masons assert that because the state court suit was filed first, that court should retain jurisdiction. The dist rict court also relied on the priority in filing in its reasoning. However, the Supreme Court in *Moses H. Cone* characterized as "mechanical" a similar argument in that case and noted that in the arbitration context, such an argument "disregards the obvious reason for the ... priority in filing. An indispensable element of [the contractor's] cause of action under § 4 for an arbitration order is the Hospital's refusal to arbitrate.... That refusal did not occur until less than a day before the Hospital filed its state suit." *Id.* at 21, 103 S.Ct. at 939. *See also Municipal Energy Agency v. Big Rivers Elec. Corp.,* 804 F.2d 338, 344 (5th Cir.1986).

In this case, Snap-on had no notice that the Masons would repudiate their apparent duty to arbitrate until the state court suit was filed, and therefore, there is no reason why Snap-on should be expected to have filed the within suit before that date. That the state of Texas may have some interest in maintaining jurisdiction over this litigation has no bearing in a case such as this one, where the federal policy favoring arbitration prevails "notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941. Moreover, we note that when the district court chose to abstain, the state court had not substantially proceeded towards disposition of the case. In *Moses H. Cone,* Justice Brennan commented that "the federal suit was running well ahead of the state suit at the very time that the District Court decided to refuse to adjudicate the case." 460 U.S. at 22, 103 S.Ct. at 940.

As to the fifth *Moses H. Cone* factor, whether federal law controls the case, the Masons contend that because state law governs the underlying dispute, their claims against Snap-on should be heard in state court. However, in this federal case—concerning *only* whether the case should be submitted to arbitration under § 4 of the FAA—federal law provides the rule of decision on the merits. *Id.* at 24, 103 S.Ct. at 941. The basic issue presented in this suit, as in *Moses H. Cone,* is "the arbitrability of the dispute" between the opposing parties, and federal law governs that issue whether it is raised in federal or state court. *Id.* at 24, 103 S.Ct. at 941.

Despite the obvious applicability of *Moses H. Cone* to the facts of the instant case, the

Masons present several additional arguments with which they attempt to distinguish this case from *Moses H. Cone.* In that context, they contend that the individual state defendants are indispensable parties to the within case under Fed.R.Civ.P. 19 and that the presence of all of them destroys diversity jurisdiction.[5] Without diversity jurisdiction, the federal courts would have no subject matter jurisdiction over this case.[6] According to the Masons, the co-defendants are indispensable because "any resolution by arbitration does not adjudicate all issues of law and fact between the Masons and all potential defendants."

Under Rule 19(a)(1), joinder is required if "in the person's absence complete relief cannot be accorded among those already parties." This is essentially what the Masons are contending. However, such a contention merely re-states the "piecemeal litigation" argument which the Supreme Court rejected in *Moses H. Cone.* In *Moses H. Cone,* the existence of the state suit against the architect did not make the architect "indispensable" to the federal court suit. While the Supreme Court recognized that any suit against the architect would necessarily take place in another forum if the architect did not consent to arbitration, nonetheless, that result did not warrant abstention. *Id.* at 19-21, 103 S.Ct. at 938-940.

In a further attempt to demonstrate "exceptional circumstances" warranting abstention, the

---

[5]Under Rule 19, joinder is required if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

"When joinder of someone described in Rule 19(a) is not feasible [because it will deprive the court of subject matter jurisdiction], the court must examine ... Rule 19(b) to determine whether the action may go forward in his absence or must be dismissed...." 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1604, at 41 (1986). Because in this case joinder is not required under 19(a), *see infra,* it is unnecessary for this court, in this appeal, to go on to address the 19(b) standards.

[6]Although the Arbitration Act creates a body of substantive federal law governing arbitration agreements, it does not provide a basis for federal question jurisdiction. "[T]here must be diversity of citizenship or some other independent basis for federal jurisdiction before [an order compelling arbitration] can issue." *Moses,* 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32.

Masons claim that Snap-on waived its right to arbitration by failing to request arbitration within six weeks of the Masons' written notice to Snap-on that Snap-on had violated the contract. The Masons assert that they provided written notice to Snap-on on January 23, 1992, that Snap-on was in breach of the contract. Although the district court did not consider this argument, and we therefore have no factual record with regard to this matter, even if we assume arguendo that the Masons' factual assertion is correct, their waiver claim lacks merit.

"[F]ifth Circuit precedent places a "heavy burden' on a party claiming waiver of arbitration rights." *Storey v. Shearson-American Express,* 928 F.2d 159, 163 (5th Cir.1991) (quoting *Frye v. Paine, Webber, Jackson & Curtis, Inc.,* 877 F.2d 396, 398 (5th Cir.1989)). "Accordingly, we indulge a presumption against finding waiver." *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 577 (5th Cir.1991). Herein, the Masons' waiver contention is based upon the arbitration clause of the agreement which in pertinent part provides: "Any request for arbitration shall be filed in writing within six (6) months following the alleged breach; otherwise, the right to any remedy shall be deemed forever waived and lost." From Snap-on's perspective, there was no possible breach of the dealer agreement to arbitrate until the Masons sought to avoid arbitration and filed their suit in state court. Under the agreement, a party who alleges a breach must request arbitration within six months. The plain language of the agreement, as well as common sense, reveals that the agreement does not require an arbitration request to be made upon *notice* of an alleged breach, only upon an actual breach. By filing its request for arbitration within one month of the Masons' state court filing, Snap-on complied with the dealer agreement.[7] The fact that the breach alleged by the Masons may have occurred more than six months before Snap-on requested arbitration cannot under any commonsense interpretation of the arbitration clause bar Snap-on of the right to arbitrate since Snap-on had no way of knowing what the Masons would do until they did it.

---

[7]We acknowledge that questions of waiver go to the substantive merits of the petition to compel arbitration, i.e., whether the claim is arbitrable. Because the district court abstained from addressing the merits, we could remand this case to the district court to reconsider the petition in the light of this Court's guidance. However, where abstention is clearly unwarranted, as it appears to be in this case, the appellate court should consider the merits itself and move this litigation along. *See Burns v. Watler,* 931 F.2d 140, 147 (1st Cir.1991).

Finally, the Masons argue that they were fraudulently induced to enter the dealership agreement and they proffer certain facts concerning such alleged inducement. However, the merits of the underlying dispute are for the arbitrator to consider, not for this Court or the district court. Under § 4 of the FAA, the federal district court ascertains only whether the arbitration clause covers the allegations at issue. "If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute." *Municipal Energy,* 804 F.2d at 342 (citing *City of Meridian v. Algernon Blair, Inc.,* 721 F.2d 525, 528 (5th Cir.1983)).

The fact that the Masons make general allegations of fraud does not alter this analysis. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court "held that, under section 4 of the FAA, the "making' of an agreement to arbitrate was not called into question by the allegation that the entire contract was fraudulently induced. Therefore, the Court concluded, the fraudulent inducement question was properly resolved by an arbitrator rather than a court." *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 244 (5th Cir.1986) (citing *Prima Paint,* 388 U.S. at 403-04, 87 S.Ct. at 1805-1806); *see also Municipal Energy,* 804 F.2d at 342. Only if the allegation of fraud goes specifically to the making of the agreement to arbitrate must a district court address the merits of the fraud claim. The district court does not address "claims of fraud in the inducement of the contract generally." *Prima Paint,* 388 U.S. at 404, 87 S.Ct. at 1806. As in *Prima Paint* and *Mesa Operating,* the defendants in this case have "not argued that the agreement to arbitrate is invalid separately from the entire contract. Thus the arbitration provision remains separate and enforceable...." *Mesa Operating,* 797 F.2d at 244.

In sum, the Masons have not demonstrated "exceptional circumstances" which support abstention; rather, *Moses H. Cone* makes clear that in this case, as in most cases, a "liberal federal policy favoring arbitration" prevails, and abstention is unwarranted. 460 U.S. at 24, 103 S.Ct. at 941. In the light of the foregoing discussion, we reverse the district court and remand with direction to that court to enter an appropriate order compelling arbitration.

REVERSED AND REMANDED.