**BANK ONE, N.A., Plaintiff,**

v.

**Clarence COATES, Defendant.**

**No. Civ.A. 3:00CV671LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 2, 2001.

William H. Leech, Mark H. Tyson, McGlinchey Stafford, Jackson, MS, for plaintiff.

Suzanne Griggins Keys, Byrd & Associates, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

There are presently pending in this cause for resolution a number of motions, including plaintiff Bank One's motion to compel arbitration, and defendant's motions for abstention, to join additional par-

ties and dismiss, and for discovery. The parties have responded to each other's motions and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motions should be denied, and that Bank One's motion should be granted, for reasons that follow.

On October 20, 1999, the defendant herein, along with thirty-seven others, filed suit in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi, against several defendants, including Bank One, alleging claims stemming from his purchase of a home satellite system. In that lawsuit, defendant, who financed his purchase of the satellite system through a revolving credit card plan with Bank One, asserts various claims against Bank One involving alleged improper actions on Bank One's part in connection with such financing.

As of November 22, 1999, none of the defendants in the state court action had been served with process. Nevertheless, one of the named defendants, Sky Scanner Satellite, voluntarily entered an appearance on that date and filed a notice of removal to the United States District Court for the Northern District of Mississippi,[1] asserting in its removal petition that the plaintiffs' claims arose under one or more of several federal laws, including, *inter alia,* the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* so that there was federal jurisdiction over the case under 28 U.S.C. § 1331. On a motion by the plaintiffs in that action, Judge Neal Biggers entered an order on August 23, 2000 remanding the case to state court.[2]

Shortly thereafter, on September 7, 2000, Bank One filed the present action in this court alleging that all of the claims asserted against it by the plaintiffs in the Bolivar County lawsuit are subject to an agreement by the parties to submit their disputes to binding arbitration. Bank One contemporaneously filed identical federal court suits against each of the other thirty-seven state court plaintiffs. Soon after service on the defendant herein, Bank One moved to compel arbitration in accordance with § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to which defendant responded in opposition.[3]

Included in defendant's response to Bank One's motion to compel arbitration is a request for abstention by this court in deference to the pending Bolivar County action; and accompanying defendant's response is a separate motion to join necessary parties and conduct discovery. By that motion, defendant requests the joinder of additional defendants and consequent dismissal (since their joinder, if permitted, would destroy diversity). Defendant asks, alternatively, that in the event the court declines defendant's request to dismiss or abstain, defendant be allowed discovery of allegedly "critical facts" relating to the alleged arbitration agreement prior to any ruling by the court on Bank One's motion to compel arbitration. Thus, the court has before it for consideration Bank One's motion to compel arbitration, and requests by defendant for joinder and dismissal of this action, for abstention and, alternatively, for a stay of the motion to compel arbitration while defendant conducts discovery. Since defendant's motion for joinder is, ultimately, addressed to this court's juris-

---

1. Sky Scanner expressly acknowledged in the removal petition that "no other defendants ... have been served with process as of the filing of this petition for removal."

2. *Mable Griffin, et al. v. Bank One, et at.,* No. 2:99CV227–B–B (Aug. 23, 2000).

3. Bank One was served with process on May 1, 2000, while the remand motion was pend-

ing. Bank One answered the complaint on June 2, 2000. On September 7, 2000, immediately following Judge Biggers' remand order, Bank One filed the present action. Around that same time, the state court plaintiffs requested and were given a trial setting by the state judge, who further ordered the parties to submit the case to mediation.

diction, that motion will be considered first.

### MOTION FOR JOINDER OF NECESSARY PARTIES

██ As both parties recognize, although the Federal Arbitration Act expressly authorizes the filing of petitions to compel arbitration in federal district courts, the FAA treats arbitration simply as one means of resolving disputes that lie within the jurisdiction of the federal courts, Allied–Bruce *Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 291, 115 S.Ct. 834, 848, 130 L.Ed.2d 753 (1995), and does not itself grant the federal courts subject matter jurisdiction, *id.;* therefore, an action brought in federal court to compel arbitration requires an independent basis for federal jurisdiction, such as federal question or diversity jurisdiction, *Specialty Healthcare Mgt., Inc. v. St. Mary Parish Hosp.,* 220 F.3d 650, 653 (5th Cir.2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983)); *Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1280 (5th Cir. 1994). In this case, defendant contends, and Bank One acknowledges, that in accordance with Judge Biggers' ruling, there is no federal question jurisdiction. Bank One maintains, however, that there is diversity jurisdiction inasmuch as Bank One, an Ohio corporation, and defendant, a Mississippi resident, are of diverse citizenship and as the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. For his part, defendant submits that Bank One has, in effect, attempted to manufacture diversity jurisdiction by deliberately failing to join necessary parties to this action, and in particular, by failing to join Bank One's in-state agents/employees with whom defendant directly dealt in connection with the sale/finance transaction that is the subject of the underlying litigation. Defendant thus moves the court to add as a party "S. Broadwater," the agent/employee who dealt with him; and he submits that once Broadwater is joined, there will be no

diversity jurisdiction and the case will be dismissed, mooting all other issues.

Defendant's contention that others who had some involvement in the underlying transaction are necessary parties to this suit within the contemplation of Federal Rule of Civil Procedure 19 is not well taken. In this case, Bank One seeks to compel arbitration pursuant to the terms of an alleged arbitration agreement between Bank One and the defendant. The fact that the defendant may have asserted claims in the state court suit against others who had some involvement in the underlying transaction does not make those others necessary parties to this action, in which the sole issue is whether the defendant is to be compelled to arbitrate its claims against Bank One. *See Snap–On Tools, Corp. v. Mason,* 18 F.3d 1261, 1266–67 (5th Cir.1994) (nondiverse parties joined as alleged joint tortfeasors in state court action are not indispensable parties in a diversity-based motion to compel arbitration). Accordingly, Bank One's motion for joinder will be denied; and as diversity jurisdiction exists as to the parties to this action, defendant's accompanying request for dismissal will be denied.

### DEFENDANT'S REQUEST FOR ABSTENTION

The court also rejects defendant's argument that the court, even should it find some basis for federal jurisdiction, should nevertheless refrain from exercising its jurisdiction in the interest of avoiding "the piece mealing of litigation." In this vein, defendant, contending that Bank One's filing of these thirty-eight separate lawsuits against each of the state court plaintiffs is "merely a defensive vexatious maneuver by Bank One, seeking to find some court that would hear its arguments," urges this court to abstain in deference to the pending state court suit as that suit was filed first, involves state law claims and provides Bank One an adequate forum for pursuing its efforts to compel arbitration. The court, however, is wholly unpersuaded that circumstances exist in this case which

would warrant the court's abdication of its jurisdictional powers.

In *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court concluded that the determination whether to stay a proceeding to compel arbitration under 9 U.S.C. § 4 in favor of state court litigation is governed by the "exceptional circumstances" standard articulated by the Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Ordinarily, the pendency of litigation in state court is not a bar to proceedings in federal court involving the same subject matter and the federal court, if possessed of jurisdiction, must ordinarily entertain the action. *See id.* 817, 96 S.Ct. at 1246 (" 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,' and ... the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' "). However, the *Colorado River* abstention doctrine, upon which defendant relies, is premised on a recognition that there are "exceptional circumstances" in which a federal court, even though it has subject matter jurisdiction, should decline to exercise that jurisdiction in favor of a concurrent state court action in the interest of comity and conservation of judicial resources. *Id.* (in exceptional and limited circumstances, federal court may dismiss federal suit in favor of state court action based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation"); *see Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.2000) ("The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources.").

■ The Supreme Court has emphasized that the *Colorado River* doctrine "represents an 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.' " *Black Sea*, 204 F.3d at 650 (citations omitted). Hence, under the *Colorado River* doctrine, as reiterated by the Court in *Moses H. Cone*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Moses H. Cone*, 460 U.S. at 13, 103 S.Ct. at 936, and "[o]nly the clearest of justifications will warrant dismissal," *id.* at 15, 103 S.Ct. at 936.

■ In *Colorado River*, the Supreme Court declined to prescribe a "hard and fast rule" governing the appropriateness of abstention based on considerations of federalism, comity and judicial economy, but set forth factors for district courts to consider to determine whether to abstain, as follows: (1) whether the state or federal court has assumed jurisdiction over the res; (2) any inconvenience involved in litigating in the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law will provide the rule of decision; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) and the presence or absence of concurrent jurisdiction. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. These factors do not compose a mechanical checklist and instead, what is required is "a careful balancing of the important factors as they apply in a given case," *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937; and since "the balance [is] heavily weighted in favor of the exercise of jurisdiction," *id.* at 15, 103 S.Ct. at 936, then if a given factor does not weigh in favor of abstention, it is not merely a neutral factor but instead weighs against abstention, *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1190–91 (5th Cir. 1988)).

Defendant herein urges in support of his request for abstention that if this case (and the thirty-eight other federal court actions brought by Bank One against the state court plaintiffs) is allowed to proceed, there will be substantial piecemeal litigation resulting in an enormous waste of judicial resources which is patently unwarranted inasmuch as the state court action, which was commenced long before this case, can readily accommodate all the parties and provide a vehicle for the resolution of all the issues raised between all the parties involved in the challenged transactions, including the issue of arbitration. Defendant submits that abstention is not only advisable in view of these circumstances, but that it would be particularly appropriate in view of Bank One's blatant maneuvering to avoid a "proper state court jurisdiction". The court is unpersuaded.

First, while the possibility of piecemeal litigation is evident, "the 'piecemeal litigation' factor is not applicable in the FAA context, where the overriding federal policy is 'to give effect to ... arbitration agreement[s]'." *Safety Nat'l Cas. Corp. v. Bristol–Myers Squibb Co.*, 214 F.3d 562, 565–66 (5th Cir.2000) (quoting *Moses H. Cone*, 460 U.S. at 20, 103 S.Ct. 927, 74 L.Ed.2d 765); *see also Snap–On Tools Corp. v. Mason*, 18 F.3d 1261, 1265 (5th Cir.1994) (piecemeal litigation is sometimes "the inevitable result of congressional policy strongly favoring arbitration"); *Black Sea*, 204 F.3d at 650 ("A 'clear federal policy ... [of] avoidance of piecemeal adjudication of water rights in a river sys-

tem' was 'the most important factor' in the Supreme Court's decision to abstain in *Colorado River*.... Conversely, a clear Congressional policy 'to move parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible'—a policy that was most readily given effect in federal court—decisively weighed against abstention in *Moses H. Cone Mem. Hosp.*"). Indeed, as the Court recognized in *Moses H. Cone*, "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20, 103 S.Ct. at 939.[4]

Further, while defendant argues that the case involves numerous state law issues, the Fifth Circuit has said that "only rarely will 'the presence of [a] state law issue[ ] weigh[ ] in favor of' abstention, and even where the state court can adequately protect all parties, this fact 'can only be a neutral factor or one that weighs against ... abstention'." *Safety Nat'l Cas. Corp.*, 214 F.3d at 566 (citing *Evanston*, 844 F.2d at 1193); *see also Black Sea*, 204 F.3d at 650–51 n. 7 (noting that where there is no res at issue, the danger of inconsistent rulings is less relevant). Moreover, while state law may inform the court's decision regarding arbitration, the ultimate question whether arbitration is to be compelled is a decisively federal issue.[5] *See Snap–On Tools*, 18 F.3d at 1266 (federal law governs the issue of the arbitrability of the dispute between the opposing parties).

---

**4.** The court observes that since this case does not involve any res or property over which any court, state or federal, has taken control, "the absence of this first factor weighs against abstention." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir.1999). And since both the federal and state courts are in Mississippi, the second factor is likewise inapplicable and its absence weighs against abstention. *Id.*

**5.** The court would note, too, that although defendant argues that "state courts as well as federal courts have the authority to decide whether arbitration should be ordered," the Fifth Circuit has suggested that this position

"may or may not be soundly based." *Snap–On Tools Corp. v. Mason*, 18 F.3d at 1265 n. 4.

This is because the Supreme Court has expressed reticence on this issue, by noting that although state courts must grant stays pursuant to § 3 of the FAA, "[i]t is less clear ... whether the same is true of an order to compel arbitration under § 4 of the Act." *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. at 942 (noting the "probable inadequacy of the state-court proceeding to protect [the] rights" of the party seeking arbitration).

*Id.*

Finally, the Supreme Court has left no doubt as to its view of the importance of the federal interest in the enforcement of arbitration agreements. In *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 728, 116 S.Ct. 1712, 1727, 135 L.Ed.2d 1 (1996), for example, the Court concluded that the federal interests were pronounced, as the plaintiff's motion to compel arbitration under the Federal Arbitration Act (FAA) "implicate[d] a substantial federal concern for the enforcement of arbitration agreements." *Id.* at 728–29, 116 S.Ct. 1712 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985) (FAA reflects "emphatic federal policy in favor of arbitral dispute resolution"), and *Moses H. Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942 (in deciding whether to defer to state court adjudication under the *Colorado River* doctrine, "the presence of federal-law issues must always be a major consideration weighing against surrender")); *Black Sea*, 204 F.3d at 650 n. 7 (noting that "[t]he Supreme Court has also emphasized the determinative role of a clear federal policy with respect to the appropriate application of these factors.").

This court thus concludes without hesitation that defendant's request for abstention should be denied.[6]

That brings the court to Bank One's motion to compel arbitration.

*MOTION TO COMPEL ARBITRATION*

The Credit Application and Security Agreement executed by defendant in connection with his purchase and financing of the satellite dish system recites, directly above the signature line, as follows:

> I acknowledge that this application is subject to approval of credit and acceptance by Bank One at its principal office in Dayton, Ohio and that any credit extended pursuant hereto is extended by Bank One from its principal office in Dayton, Ohio. If this application is approved, I [the applicant] agree to abide by the terms of the account Agreement and Disclosure Statement which shall be issued by Bank One from time to time.

The credit application was accompanied by a Revolving Credit Card Plan and Disclosure Statement and Cardmember Agreement, paragraph 12 of which purports to

**6.** Defendant argues that Bank One has already sought federal court jurisdiction in the underlying case by the removal to federal court and, failing in that attempt, has now filed its thirty-eight separate suits, all in an effort to avoid the proper state court jurisdiction and to harass the state court plaintiffs. He concludes that such improper conduct by Bank One is a factor the court may properly consider in deciding whether to abstain. *See Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1234 (7th Cir. 1979) ("Under *Colorado River*, it was proper for Judge Will to consider the vexatious nature of the federal suit as well as any other factors bearing on the propriety of continuing the stay."). Defendant also argues that since the state court first acquired jurisdiction over the subject matter of this dispute, and since the state court case has proceeded to the point of discovery and a trial setting, it makes more sense to allow the parties' disputes to be resolved in that one forum. None of these alleged circumstances detracts in the least from the court's conclusion that abstention is not warranted, not only because of the relative insignificance of these alleged facts in light of the federal interests at stake, but also because defendant's characterization of the facts is not entirely accurate.

Defendant's suggestion that Bank One has been striving mightily, and by utilization of any means, no matter how illegitimate, to make its way to federal court, seems somewhat disingenuous. Contrary to defendant's insinuation, Bank One did not remove the Bolivar County suit to the Northern District; it had not even been served with process at the time the case was removed, and was not served with process until the case had already been in federal court for nearly seven months. Moreover, it strikes the court that once the case was in federal court via removal, Bank One could reasonably have awaited a decision on the motion to remand in deciding whether it would become necessary to file a separate federal action to compel arbitration.

The court would note, too, that while there has been a trial setting by the state court, that occurred in response to a specific request by the state court plaintiffs *after* Bank One filed this case and moved to compel arbitration.

define how the agreement may be amended, stating as follows:

12. AMENDMENT: We may change or amend the terms of this Agreement upon fifteen (15) days prior written notice if required by law. Any changed or amended fee, charge, interest rate, FINANCE CHARGE, ANNUAL PERCENTAGE RATE, or minimum payment amount, whether increased or decreased, may be effective to both the outstanding Account Balance and future transactions.

On March 8, 1998, Bank One sent a notice to its cardmembers, including defendant, announcing a proposed modification to the cardmember agreement. This notice proposed that the cardmember agreement would be modified by adding the following clause requiring arbitration of any disputes between Bank One and the cardmember:

ARBITRATION: Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum Office, *www.arb-forum.com*, or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone 1–800–474–2371. Any arbitration hearing at which you appear will take place at a location within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16. Judgment upon any ar-

bitration award may be entered in any court having jurisdiction.

\*      \*      \*      \*      \*      \*

IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

Cardmembers were given the option of rejecting this arbitration provision contained in the notice, failing which the agreement would become effective April 15, 1998. The procedure for rejecting the arbitration provision was set forth in the notice, as follows:

EFFECTIVE DATE/NON–ACCEPTANCE INSTRUCTIONS. The changes in terms summarized above will become effective April 15, 1998. If you do not wish to accept the new terms, you must notify us in writing of your decision on or before April 15, 1998. Please include your name, address and account number on the correspondence and mail it to: Bank One, P.O. Box 276, Dayton, OH 45401. Giving us this notice will not constitute any changes to your current obligation to pay off any outstanding balance on your account under your prior terms.

Defendant did not notify Bank One that he would not accept the terms of the arbitration provision as set forth in the amendment notice.

Defendant does not dispute any of these facts, nor does he challenge Bank One's assertion that the language of the arbitration clause in the amendment notice would cover his claims against Bank One. He maintains, however, that he is not bound by the arbitration "agreement" inasmuch as he, in fact, never agreed to it and as the

agreement is in substance unfair and unconscionable.

Congress provided in the Federal Arbitration Act (FAA) that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. at 941. In accordance with Section 4 of the FAA, "if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,' shall direct the parties to arbitrate." *Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987) (quoting 9 U.S.C. § 4); 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which [would have subject matter jurisdiction under Title 28] for an order directing that such arbitration proceed in the manner provided for in such agreement."). If, on the other hand, " 'the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof.' " *Id.* (quoting § 4).

The Fifth Circuit has explained that

[i]n adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.... The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."

*Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996) (citations omitted).

When deciding the broader issue of whether the parties agreed to arbitrate the dispute in question, "the court must look to the body of federal arbitration law," *Bhatia,* 818 F.2d at 421, which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration," *id.* (quoting *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941). As to the more specific issue of whether there is a valid agreement to arbitrate, " 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts' " *Webb,* 89 F.3d at 257 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing so, must give "due regard ... to the federal policy favoring arbitration," *id.* (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989)); *McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 984 (5th Cir.1995) ("[I]n construing an arbitration agreement within the scope of the FAA, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). At the same time, however, the court may grant relief to a party opposing arbitration where he presents "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract' " *Mitsubishi Motors,* 473 U.S. at 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (quot-

ing 9 U.S.C. § 2); *see also Bhatia,* 818 F.2d at 421 (court should at all times "remain keenly attuned to well-grounded claims that 'the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." ' " (quoting 9 U.S.C. § 2)); *Rhode v. E & T Investments, Inc.,* 6 F.Supp.2d 1322, 1326 (M.D.Ala.1998) ("[Section] 2 'gives States . . . methods for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision' both in equity and under principles of contract law." (quoting *Allied–Bruce Terminix v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995))).

In the case at bar, defendant advances a variety of arguments in support of his contention that the arbitration agreement is unenforceable, most of which relate to his insistence that he never clearly and unmistakably agreed to arbitration. In this vein, defendant argues that the arbitration provision is unenforceable because defendant's cardholder agreement with Bank One was procured by fraud; because Bank One could not lawfully add (or "slip in") an arbitration clause via amendment to the cardholder agreement; and because defendant did not clearly and unmistakably agree to arbitrate and thereby waive his right to a jury trial. Defendant also submits that the subject arbitration agreement is substantively unconscionable and for that reason unenforceable. The court will address these arguments in turn, but first considers defendant's request for discovery.

### DEFENDANT'S MOTION FOR DISCOVERY

Defendant submits that "[t]here are a number of areas on which discovery is needed before the Court could conclude that the arbitration provision was indeed validly formed and enforceable" and that "[n]o ruling on enforceability should be made without this necessary discovery." However, defendant has only identified two topics as to which he claims discovery is needed. First, defendant argues that since he says he did not agree to any arbitration clause, then an issue for discovery is "whether there was a sufficiently clear agreement to arbitrate." Second, defendant seeks discovery on the subject of "[w]hat the arbitration entails-its costs, its procedures, etc." [7] The court is unpersuaded that discovery is warranted on either of the identified topics before a ruling on the motion to compel arbitration.

In the court's opinion, it does not follow from the fact that defendant takes the position that he did not agree to arbitration that discovery is needed to determine whether the ostensible arbitration agreement is enforceable. The terms of the original agreement and amendment notification can be gleaned from the documents themselves; and there is no apparent need for discovery as to defendant's own knowledge of the contents and/or existence of these documents or as to his alleged understanding of (or failure to understand) the terms of these documents, for these are matters only the defendant himself could know.

7. In his motion, defendant also recites that discovery is needed to determine "what was the 'consideration' given and 'mutual promises' made via the arbitration agreement." Defendant does not mention this proposed discovery topic in his memorandum of authorities, nor with respect to the enforceability of the arbitration agreement does he appear to have raised any issue as to the adequacy of consideration or mutuality of obligation. On this topic, however, the court would note that even if defendant had raised the issue of adequacy of consider- ation, that would not provide a basis for avoiding the arbitration clause, as "subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." *Citizens Fed. Bank, F.S.B. v. Brickler,* 114 Ohio App.3d 401, 407, 683 N.E.2d 358, 362 (1996) (quoting *Software Clearing House, Inc. v. Intrak, Inc.,* 66 Ohio App.3d 163, 172, 583 N.E.2d 1056, 1061 (1990)). Moreover, the court perceives no factual basis for any claimed lack of mutuality.

Further, the court can fathom no reason that defendant could not ascertain "what the arbitration entails" from the amendment notification itself, which details the terms of the proposed arbitration, and the National Arbitration Forum rules, which are incorporated by the arbitration provision, set forth the procedures and rules that apply to any arbitration conducted pursuant to the arbitration provision in the Bank One amendment notification. Accordingly, and bearing in mind that the FAA "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses," *Moses H. Cone,* 460 U.S. at 29, 103 S.Ct. at 944, the court rejects defendant's request that discovery be done before the court rules on the motion to compel arbitration. *See Snap–On Tools,* 18 F.3d at 1265 ("[I]n FAA suits, the federal courts conduct 'an expeditious and summary hearing, with only restricted inquiry into factual issues' bearing on the making of the arbitration agreement.") (quoting *Moses H. Cone,* 460 U.S. at 22, 103 S.Ct. at 940).

### DEFENSES TO ARBITRATION

#### Fraud:

■ Defendant argues, without elaboration, that because he has alleged that the contract at issue was procured by fraud and under the law "a contract procured by fraud in fact is void and cannot be enforced," then it follows that the arbitration provision is unenforceable—or at least it cannot be summarily determined without further development of the facts that the arbitration provision is enforceable. In other words, defendant argues that he was fraudulently induced to sign the credit application and suggests that the arbitration clause is for that reason unenforceable.[8]

However, the law on this point is clear: "Only if the allegation of fraud goes specifically to the making of the agreement to arbitrate must a district court address the merits of the fraud claim. The district court does not address 'claims of fraud in the inducement of the contract generally.' " *Snap–On Tools,* 18 F.3d at 1268 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)); *see Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06 ("[I]f the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").[9]

Although the law on this point is clear, defendant suggests that because he is alleging fraud in the factum, not fraud in the inducement, then his claim is not subject to resolution via arbitration. The court cannot agree. Even assuming that the facts averred by defendant could correctly be categorized as fraud in the factum rather than in the inducement, the Fifth Circuit has specifically rejected this distinction as a basis for assessing the arbitrability of a claim of fraud relating to the contract generally as opposed to fraud relating to the procurement of an agreement to arbitrate. In *R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992), the court said,

Those plaintiffs alleging fraud insist that the fraud constitutes fraud in the factum rather than fraud in the inducement.

---

8. According to defendant, while he may have signed the credit card application, he was misled into signing it and no one ever explained the document to him. In an affidavit accompanying his response to the motion to compel, defendant asserts that "[t]he salesperson I dealt with did not inform me that I was signing for a credit card from Bank One."

9. This principle is not limited to allegations of fraud but extends to other defenses alleged to render a contract void. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391, 398 & n. 11 (5th Cir. Unit B Feb. 1981) (holding that to render arbitration clause unenforceable, coercion and duress must relate specifically to the clause rather than to the contract as a whole).

They argue that the distinction between fraud in the factum and fraud in the inducement is determinative of whether they can be compelled to arbitrate. We disagree that the type of fraud alleged is determinative of arbitrability. Under *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967), and its progeny, the central issue in a case like this is whether the plaintiffs' claim of fraud relates to the making of the arbitration agreement itself or to the contract as a whole. *See C.B.S. Employees Federal Credit Union v. Donaldson, et al.*, 912 F.2d 1563 (6th Cir. 1990); *Bhatia v. Johnston*, 818 F.2d 418 (5th Cir.1987) ("We must determine whether Bhatia's complaint is directed at the entire contract or only the arbitration clause."). If the fraud relates to the arbitration clause itself, the court should adjudicate the fraud claim. If it relates to the entire agreement, then the Federal Arbitration Act requires that the fraud claim be decided by an arbitrator. *C.B.S. Employees Federal Credit Union v. Donaldson, et al.*, 912 F.2d 1563, 1566 (6th Cir.1990).

*Id.*

### Unconscionability

■ Contrary to defendant's insinuation, and as this court has recognized, arbitration agreements are not inherently unconscionable, *Smith v. EquiFirst Corp.*, 117 F.Supp.2d 557, 564 (S.D.Miss.2000); and so in order to avoid an arbitration agreement on the basis of unconscionability, the party resisting arbitration must show that the particular arbitration provision is unconscionable and hence unenforceable. Under Ohio law, which is made applicable by the terms of the cardholder agreement,

"[u]nconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties." *Unit-*

*ed States v. Bedford Assocs.*, 657 F.2d 1300, 1312–13 (2d Cir.1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). To establish that an agreement is unconscionable, the complaining party must demonstrate: 1) substantive unconscionability, by showing that the contract terms are unfair and unreasonable, and 2) procedural unconscionability, by showing that the circumstances surrounding the contract were so unfair as to cause there to be no voluntary meeting of the minds. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 621 N.E.2d 1294, 1299 (1993).

*Parsley v. Terminix Int'l Co.*, No. C–3–97–394, 1998 WL 1572764 (S.D.Ohio Sept. 15, 1998).

■ *Procedural Unconscionability:* Though perhaps not couched in terms of procedural unconscionability, defendant does argue that the circumstances surrounding the addition of the arbitration provision to the parties' alleged contract were so unfair as to compel a conclusion that there was no voluntary meeting of the minds. That is, despite language in the original cardmember agreement purporting to allow Bank One to "change or amend the terms of this Agreement upon fifteen (15) days prior written notice if required by law," defendant insists that he was not sufficiently apprised of the arbitration provision and that it would thus be unconscionable to order him bound by its terms. More specifically, defendant complains that the original cardholder agreement—which he characterizes as a lengthy, single-spaced document filled with "legalese"—said nothing about arbitration. It did include "one tiny paragraph" that purported to allow Bank One to change the terms of the agreement, but according to defendant, that paragraph gave no indication that the agreement could be changed to add an arbitration provision. Defendant further complains that the notice later sent by Bank One to its account holders was, like the original agreement, in a single-spaced, small-typed format which,

according to defendant's version of the document, described several changes in the cardholder agreement, including mandatory arbitration; and as described by defendant, the arbitration provision was itself "difficult to understand and filled with legalese."

The question for the court on the issue of procedural unconscionability is whether "the insertion of the arbitration provision into the contract was done in a procedurally unfair manner." *Parsley*, 1998 WL 1572764, at *5. Having considered this issue in light of the record in this cause, the court concludes that it was not.

A review of the cardholder agreement discloses that the document is indeed rather lengthy, with a font that could be accurately characterized as small, if not "tiny". The font, however, is legible, and consistent throughout the document. Moreover, the agreement does recite, as defendant acknowledges, that the agreement can be amended from time to time by Bank One upon notification to defendant.

Nevertheless, defendant suggests that he could not reasonably have understood that Bank One could, or have anticipated that it would amend the agreement to add an arbitration agreement, since the original agreement did not mention arbitration at all and since the "amendment" provision referenced only changes to payments, charges, fees and the interest rate, suggesting that these were the only types of amendments that could be made.[10] The agreement, though, stated simply, unambiguously and without limitation, that Bank One could "change or amend the terms of th[e] Agreement."

Given, then, that the original cardholder agreement permitted amendments, the ar-

bitration provision is not rendered unenforceable simply by virtue of the fact that Bank One undertook to add the arbitration provision via amendment. Consistent with the terms of the original agreement, Bank One could validly amend its agreement to add an arbitration clause, just as it could have amended the agreement to add or change any other term on the agreement. *See, e.g., Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434 (N.D.Ill. Aug. 1, 1997) (canceling Card Miles bonus program).[11] Indeed, Ohio Banking statutes specifically authorize amendments, stating that, "[s]ubject to any requirements under applicable federal law, a bank and a borrower may specify in their agreement any terms and conditions for modifying or amending the agreement." Ohio Rev.Stat. § 1109.20(D). Still, if the manner in which Bank One added the provision was procedurally unfair, the agreement could be found to be unconscionable and unenforceable. But the court is not persuaded that it was unfair.

Bank One sent a notification of the amendment to all its cardholders, and specifically gave them the option of rejecting the arbitration provision. Although defendant asserts that he does not recall having received the notification of amendment, he does not specifically take issue with Bank One's assertion that the amendment notification documents were in fact sent to each of its cardholders, including the defendant. Furthermore, defendant does not deny that the notice gave him the opportunity to reject the arbitration provision and that he failed to do so. Several courts have enforced arbitration agreements under similar circumstances.

For example, in *Herrington v. Union Planters Bank*, 113 F.Supp.2d 1026

---

10. Defendant presumably would agree that he could reasonably have anticipated that Bank One might amend the agreement to change terms relating to payments and charges, since the "amendment" provision of the cardholder agreement specifically referenced the possibility of a "changed or amended fee, charge, interest rate, FINANCE CHARGE, ANNUAL

PERCENTAGE RATE, or minimum payment amount."

11. In this vein, the court notes that arbitration clauses are to be treated just as any other contract clause. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

(S.D.Miss.2000), in the face of undisputed evidence that the plaintiffs' original deposit account agreements provided that the terms and conditions of their accounts could change in the future upon sufficient notice, that the plaintiffs were given notice that their accounts were being revised to include an arbitration clause and that they continued to use their accounts after the effective date of the arbitration clause, the plaintiffs argued in response to the defendant bank's motion to compel arbitration that they did not agree to arbitrate, and that the bank had tried to "slip in" an arbitration agreement without adequately informing them that the terms of their original agreements had changed. The court rejected their position, stating,

> After reviewing the letter and revised deposit agreement, the Court finds that the plaintiffs were sufficiently notified that the terms and conditions of their accounts would change effective May 1, 1998. The plaintiffs' apparent failure to read the revisions to their accounts is irrelevant to the issue of whether they agreed to arbitrate or are subject to those changes. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148–50 (arbitration clause in the terms and conditions of purchase was binding on purchaser even if he did not read the arbitration clause).

.    .    .    .    .

> [T]he plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts.... The plaintiffs could have simply declined to accept the arbitration by terminating their account before the effective date of the amendment. Because they continued performance under the revised deposit agreements after May 1, 1998, the Court finds that the plaintiffs agreed to arbitrate their disputes with [the bank].

*Id.* at 1031, 1032.

Similarly, in *Stiles v. Home Cable Concepts, Inc.*, 994 F.Supp. 1410 (M.D.Ala. 1998), the court enforced an arbitration provision added to a credit card agreement via amendment where the original agreement provided that it was subject to change, the plaintiff acknowledged that he had received notice of the amendment and he agreed that he had failed to return the postage-paid card provided by the company for customers who chose to reject the arbitration provision. The plaintiff in *Stiles* asserted that he failed to reject the arbitration provision because the amendment was not explained to him so that he could understand what it meant, and he therefore did not understand the rights he was forfeiting by not rejecting the arbitration provision. *Id.* at 1414. The court was "somewhat unsure how to take" the plaintiff's objection that the arbitration clause was invalid because he did not understand it, and thus deferred to "the principle of basic contract law that unilateral mistakes by a party do not invalidate the contract." *Id.* at 1417. Then turning to the specific issue of alleged unconscionability, the court concluded that,

> Far from being unconscionable, the procedure to which Stiles objects is specifically sanctioned by the law which applies to this contract. The procedure used is permissible under Utah law.... Stiles has not contended that AGFC failed to comply with this statutory procedure [allowing a change in terms upon fifteen days' advance notice if the contract provides that the creditor may change terms of the agreement from time to time].

*Id.* at 1417; *see also Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 921 (N.D.Tex.2000) (enforcing arbitration agreement added by way of amendment to credit card agreement); *cf. Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C. 2000) (enforcing amendments to credit card agreement which first added and then modified the added arbitration agreement where original agreement provided for amendment by notice to cardholder); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997) (arbitration

clause which was included with product (computer) mailed to customer with a proviso that the customer could return the product within 30 days was binding on customer who did not return the computer).

In support of his charge that the arbitration provision is not enforceable, defendant directs the court to *Badie v. Bank of America,* 67 Cal.App.4th 779, 79 Cal. Rptr.2d 273 (1998), in which the court refused to enforce an arbitration clause that the lender attempted to add via amendment. In *Badie,* however, in contrast to the situation presented in *Herrington, Stiles* and the case *sub judice,* the court found that the original agreement did not authorize new or amended terms, and the

plaintiffs were not given the option of rejecting the arbitration clause.[12]

In this case, the document sent to defendant notifying him of the addition of the arbitration clause did not, as defendant states, include several amendments but rather addressed the singular topic of the arbitration clause, and began with the heading "IMPORTANT NOTICE." The language of the notice was clear as to the defendant's choice to accept or reject the arbitration clause; and the arbitration clause itself was not filled with "legalese" as defendant claims, but was instead clear. It provided that all claims and disputes between the parties would be resolved through arbitration, rather than litigation, identified the arbitral forum and provided

12. The court in *Long v. Fidelity Water Systems, Inc.,* No. C–97–20118RMW, 2000 WL 989914 (N.D.Cal.2000), refused to enforce an arbitration clause added by amendment to a credit card agreement. There, the credit application signed by the plaintiff reserved to the lender the right to change the terms of the contract. *Id.* at *1. The lender subsequently sent the plaintiff a notice that an arbitration clause was being added, but permitted the plaintiff to reject the arbitration provision if he so notified the lender in writing within thirty days. *Id.* at *2. Subsequently, his account was assigned to an affiliate of the lender, at which time a second notice was sent informing the plaintiff that a new arbitration clause was being added; and unlike with the first notice, he was not given the opportunity to reject the provision. *Id.* Moreover, the second arbitration provision, unlike the first, provided that questions as to the validity or enforceability of the arbitration clause would be decided by an arbitrator, rather than by a court. *Id.*

Applying Ninth Circuit law, which based on the *Long* court's explication of pertinent arbitration principles, is somewhat more exacting as to the requisites for finding an arbitration agreement than other circuits, *see Goetsch,* 197 F.R.D. 574 (distinguishing *Long* on the basis, *inter alia,* that it applied Ninth Circuit law), the court found that application, though it provided for amendments to any terms of the agreement, could not "reasonably [be] construed as explicitly allowing the insertion of an arbitration clause." *Id.* at *3. Then, noting the Ninth Circuit's insistence that an agreement to arbitrate may not be implied but rather may be found only if "there [is] an express, unequivocal agreement to that ef-

fect," *id.* (quoting *Three Valleys Municipal Water District v. E. F Hutton & Company Inc.,* 925 F.2d 1136, 1141 (9th Cir.1991)), the court observed that the lender "never obtained any affirmative consent from [the plaintiff] regarding incorporation of the arbitration clause as part of the existing contract [and instead] required [the plaintiff] to take affirmative action if he wished to reject the incorporation of the 1998 unilateral arbitration clause." *Id.* The court noted that the defendants had "cited no case that has upheld an arbitration agreement based on a plaintiff's failure to 'opt-out' of a defendant['s] unilateral imposition of an arbitration clause." *Id.* (As discussed in the text, there have, in fact, been several such cases.) The court went on to note that the lender's position was "also weaken[ed]" by the fact that the plaintiff was already a named plaintiff in a class action suit against the lender at the time the amendment notices were sent, and yet the lender did not notify the plaintiff that if he agreed to the provision, he could not participate in the pending class action.

In the end, the court did not actually hold that the arbitration agreement was unenforceable for these reasons, but rather said that "[e]ven assuming [the plaintiff] [was] deemed to have agreed to the arbitration provision," defendants had offered no justification for holding that he agreed to arbitrate acts that occurred before the effective date of that agreement, and that the amendments, which said nothing whatsoever about retroactive application, did not apply to the dispute at issue.

For all of these reasons, the court does not consider *Long* to be persuasive on any issue before this court.

a web site and telephone number to call for information on the governing arbitration procedures. The most that can be said in favor of defendant's claim of unconscionability is that the print in the amendment notice was small. Nevertheless, it was, as with the original agreement, consistent and legible. Accordingly, the court will not invalidate the agreement simply because the print was small.

*Waiver of Jury Trial Rights*

■ Defendant contends that because the arbitration clause constitutes a waiver of his Seventh Amendment right to a jury trial, then the plaintiff must demonstrate that there was a "clear and unmistakable" waiver of this right. But that is not so. "[A] valid arbitration provision, which waives the right to resolve a dispute through litigation in a judicial forum, implicitly waives the attendant right to a jury trial." *Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909, 921 (N.D.Tex.2000).

> The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.

*Id.* (quoting *Cremin v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 957 F.Supp. 1460, 1471 (N.D.Ill.1997)); *see also Bosinger v. Phillips Plastics Corp.,* 57 F.Supp.2d 986 (S.D.Ca.1999) ("clear and unmistakable" standard not applicable to an individual's waiver of his or her own rights) (citing *Wright v. Universal Maritime Service,* 525 U.S. 70, 119 S.Ct. 391, 396, 142 L.Ed.2d 361 (1998)); *Parsley,* 1998 WL 1572764 ("The 'loss of the right to a jury trial is a necessary and fairly obvious consequence of the agreement to arbitrate.' ") (citation omitted); *Burlington Northern RR Co. v. Soo Line RR Co.,* 162 B.R. 207, 214 (D.Minn.1993) (noting that "[i]f [the Defendants were correct that a party's constitutional right to a trial by jury] presented a serious limitation on the duty to

arbitrate, arbitration provisions would have to be narrowly construed").

■ *Substantive Unconscionability:* Defendant herein submits three bases upon which he contends that the arbitration agreement is substantively unconscionable, namely that the costs he would have to bear to arbitrate effectively render an arbitral forum inaccessible; that it denies him certain remedies; and that the arbitration agreement designates a biased arbitrator.

Defendant asserts that because the arbitration agreement requires each party to bear its own expenses, including attorney's fees, regardless of who prevails, it would impose a substantial financial burden on him to arbitrate, and the arbitration agreement thus stands as a substantial barrier to the adequate resolution of their claims. He also claims, without explanation, that the arbitration provision precludes certain remedies that would be available to him in a judicial forum. Defendant's position on these points is not well taken.

The arbitration agreement provides that the arbitration will be conducted under the Code of Procedure of the National Arbitration Forum (NAF). Rule 20 of the NAF Code of Procedure expressly provides that the "Arbitrators may grant any remedy or relief allowed by applicable substantive law and based on a Claim, Response, or Request properly submitted by a Party under this Code." Thus, any relief available to defendant in a judicial forum would also be available in arbitration. *See Smith v. EquiFirst,* 117 F.Supp.2d at 562; *Johnson v. West Suburban Bank,* 225 F.3d 366, 374 n. 2 (3d Cir.2000) (NAF Code provides for "the full range of remedies" available under controlling law).

And while defendant insinuates that the fees he might have to pay for arbitration could effectively deny him access to the arbitral forum, he has provided no factual basis for such an assertion. In *Green Tree Financial v. Randolph,* — U.S. ——, 121 S.Ct. 513, 148 L.Ed.2d 373

(2000), the Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." 121 S.Ct. at 522. The Court went on to hold, though, that "where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.*

Defendant's statement that he would be required to bear his own expenses, including attorney's fees, no matter who prevails, is not well founded. The NAF Code of Procedure authorizes the award of attorney's fees to a prevailing party. And as regards the payment of costs and fees, the NAF Code of Procedure includes a "Fee Schedule" which sets filing and hearing fees by reference to the amount of a plaintiff's claim. For example, for claims under $5,000, the fee schedule provides for a filing fee of $49 and an administrative fee of $225; and for claims under $15,000, the filing fee is $100 and the administrative fee $425. The NAF Fee Schedule also states that "[a]n individual who is indigent and cannot afford to pay a fee may not have to pay a Consumer Small Claim fee." And finally, the Fee Schedule states that the "arbitrator may order the losing party to pay the fees paid by the prevailing party." In light of these provisions, defendant's contention that the agreement does not provide him an adequate arbitral forum as an alternative to a judicial forum must be rejected. *See Smith v. EquiFirst,* 117 F.Supp.2d at 563–64; *Marsh,* 103 F.Supp.2d at 925.[13]

■ Defendant's charge as to NAF bias in favor of banking institutions is fundamentally premised on the notion that Bank One has the burden to demonstrate the chosen arbitral forum's impartiality. But as Bank One notes, it is the party resisting arbitration that bears the burden of demonstrating that the arbitration agreement is unenforceable. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991). In any event, the rules governing the conduct of NAF arbitrations belie defendant's speculation that suspected bias by the NAF has any realistic potential for affecting decisions of arbitrators in NAF arbitrations. In this regard, the court observes that the NAF does not conduct the arbitration itself, but rather appoints independent third-party arbitrators who actually conduct the proceedings; and those

---

**13.** In a dissenting opinion in the *Randolph* case, Justice Ginsberg opined that since the form arbitration agreement at issue there "provide[d] no indication of the rules under which arbitration will proceed or the costs a consumer is likely to incur in arbitration," since the drafter of the agreement could have filled in that void and since the drafter of the agreement was a "repeat player in the arbitration required by its form contract" and thus had "superior information about the cost to consumers of pursuing arbitration," then it was "hardly clear that [the consumer] should bear the burden of demonstrating up front the arbitral forum's inaccessibility, or that she should be required to submit to arbitration without knowing how much it will cost her." *Randolph,* —— U.S. at ——, 121 S.Ct. 513, 524, —— L.Ed.2d ——. Significantly, Justice Ginsberg noted that Green Tree "could have filled the void by specifying, for instance, that arbitration would be governed by the rules of the American Arbitration Association (AAA). Under the AAA's Consumer Arbitration Rules, consumers in small-claims arbitration incur no filing fee and pay only $125 of the total fees charged by the arbitrator. All other fees and costs are to be paid by the business party." *Id.* She observed that "[o]ther national arbitration organizations have developed similar models for fair cost and fee allocation." *Id.* In support of that statement, Justice Ginsberg pointed to the "National Arbitration Forum provisions that limit small-claims consumer costs to between $49 and $175 and a National Consumer Disputes Advisory Committee protocol recommending that consumer costs be limited to a reasonable amount." *Id.* at 9 n. 2 (citing National Arbitration Forum, Code of Procedure, App. C, Fee Schedule (July 1, 2000); National Consumer Disputes Advisory Committee, Consumer Due Process Protocol, Principle 6, Comment (Apr. 17, 1998), http: //www. adr. org/ education/ education/consumer_protocol. html). Justice Ginsberg thus recognized implicitly that the NAF rules provide for "fair cost and fee allocation."

arbitrators may not be officers or directors of the NAF, they must take an oath to be "independent and neutral" and they must disclose any circumstances that might constitute a conflict of interest. Further,

> [t]o safeguard fairness, [the NAF Code of Procedure] provides that each of the parties may exercise one peremptory strike of a proposed arbitrator and each has unlimited challenges for cause. All legal remedies and injunctive relief are available to the parties. Any party may request a written opinion of the arbitrator's ruling.

*Marsh*, 103 F.Supp.2d at 925. Given these safeguards, the court does not consider that there exists any valid basis for contesting arbitration on this basis and the court is not persuaded that there otherwise exists any basis for finding the agreement to be unconscionable. *See Stiles*, 994 F.Supp. at 1417 (enforcing arbitration clause where plaintiff "ha[d] not shown what it is that is so objectionable about the arbitration which he is required to undertake."); *Marsh*, 103 F.Supp.2d at 920 (noting that "while the arbitration provision may have been presented in a take-it-or-leave-it manner, the Court cannot say that it is so lopsided in Defendant's favor as to be oppressive or prejudicial. The arbitration provision standing alone does not present an opportunity for one party to gain an unfair advantage over the other in arbitration, any more than the inclusion of a forum selection clause would impede a just result in a court of law.").

In summary, the court is not persuaded that there exists any basis upon which it should refuse to enforce the arbitration provision at issue and therefore, the court concludes that Bank One's motion to compel arbitration should be granted.

### CONCLUSION

Based on the foregoing, it is ordered that defendant's motions for joinder and dismissal, for discovery and for abstention are denied, and it is further ordered that

Bank One's motion to compel arbitration is granted.