# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01133-SCT

*RAY VIRGIL, BARBARA LLOYD AND
CASSANDRA JOHNSON*

*v.*

*SOUTHWEST MISSISSIPPI ELECTRIC POWER
ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/31/2018 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| TRIAL COURT ATTORNEYS: | WALKER (BILL) JONES, III |
| | MICHAEL D. SIMMONS |
| | JUSTIN RONALD GLENN |
| | HENRY T. HOLIFIELD |
| | RICHARD R. GRINDSTAFF |
| | W. BRUCE LEWIS |
| | BRANNON LEE BERRY |
| | ROBERT L. JOHNSON, III |
| | LAWRENCE JOSEPH HAMILTON, II |
| | CHRISTINA M. SCHWING |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WALKER (BILL) JONES, III |
| | MICHAEL D. SIMMONS |
| | BRANNON LEE BERRY |
| | ROBERT L. JOHNSON, III |
| | DAVID WAYNE BARIA |
| | JUSTIN RONALD GLENN |
| ATTORNEYS FOR APPELLEE: | CHRISTINA M. SCHWING |
| | W. BRUCE LEWIS |
| | LUTHER T. MUNFORD |
| | ROBERT M. GORE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/09/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Southwest Mississippi Electric Power Association (Southwest) is a nonprofit, member-owned electric cooperative corporation created by statute to provide electricity to rural Mississippians. Miss. Code Ann. § 77-5-205 (Rev. 2018). Ray Virgil, Barbara Lloyd, and Cassandra Johnson (Plaintiffs) are members of Southwest. Plaintiffs filed a lawsuit against Southwest and alleged that Southwest failed to return excess revenues and receipts to its members. Southwest moved to compel arbitration. The trial court granted Southwest's motion to compel arbitration. Plaintiffs appealed. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The purpose of rural electric cooperatives such as Southwest is to "promot[e] and encourag[e] the fullest possible use of electric energy by making electric energy available at the lowest cost consistent with sound economy and prudent management of the business of such corporations." Miss. Code. Ann. § 77-5-205 (Rev. 2018).

¶3.     To purchase electric energy from Southwest, each member is required to sign a membership application. The membership application states, "[t]he Applicant will comply with and be bound by the provisions of the charter and bylaws of the Association and such rules and regulations as may, from time to time, be adopted by the Association." Southwest's bylaws state that a person may become a member of Southwest by, inter alia, "agreeing to comply with and be bound by the Certificate of Incorporation of the Association and by these bylaws and any amendments thereto and such policies, rules and regulations as may from time to time be adopted by the Board of Directors."

2

¶4. In February 2017, the board of directors amended the bylaws to include an arbitration provision.[1] The arbitration provision, section 11.05 of the bylaws, stated the following in bold and in all capital letters:

ALTERNATIVE DISPUTE RESOLUTION. Unless otherwise prohibited by law, any controversy or claim arising out of or relating to these bylaws, or the breach thereof, or any controversy or claim arising out of or relating to patronage capital shall be resolved by binding arbitration administered by the American Arbitration Association in accordance with its arbitration rules after all conditions precedent as set forth in Article VIII, Section 8.01, if applicable, have been met. This agreement involves interstate commerce such that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, shall govern the interpretation and enforcement of this arbitration agreement. The arbitration shall be held in the State of Mississippi at a location to be designated by the party not making the initial demand for arbitration. A judgment on the award rendered by the arbitrator shall be entered in any court having jurisdiction thereof. Each party agrees to pay their own attorneys' fees and costs and each party agrees to share equally in the cost of the arbitrator.

The parties also agree to (i) waive any right to pursue a class action arbitration, or (ii) to have an arbitration under this agreement consolidated or determined as part of any other arbitration or proceeding. The parties agree that any dispute to arbitrate must be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative capacity. If any part of this arbitration clause, other than waivers of class action rights, is found to be unenforceable for any reason, the remaining provisions shall remain enforceable. If a waiver of class action and consolidation rights is found unenforceable in any action in which class action remedies have been sought, this entire arbitration clause shall be deemed unenforceable. It is the intention and agreement of the parties not to arbitrate class actions or to have consolidated arbitration proceedings. Should the parties have a dispute that is within the jurisdiction of the justice courts of the State of Mississippi, such dispute may be resolved at the election of either party in justice court rather than through arbitration.

If the arbitration clause is deemed unenforceable or the parties otherwise litigate a dispute in court, the parties agree to waive any right to a

---

[1] Plaintiffs became members of Southwest before the addition of the arbitration provision into the bylaws.

trial by jury in any proceeding brought in court.

¶5.     On December 22, 2017, Plaintiffs filed a complaint against Southwest, alleging that Southwest unlawfully had failed to return to its members more than $13 million in excess member equity. By Mississippi law, an electric cooperative may not be organized for pecuniary profit. Miss. Code Ann. § 77-5-205. Mississippi Code Section 77-5-235(5) provides,

> A corporation's rates for energy furnished or offered by the corporation shall be sufficient at all times to pay all operating and maintenance expenses necessary or desirable for the prudent conduct and operation of its business and to pay the principal of and interest on such obligations as the corporation may have issued and/or assumed in the performance of the purpose for which it was formed. The revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe. Revenues and receipts not needed for these purposes shall be returned to the members by such means as the board may decide, including through the reimbursement of membership fees, the implementation of general rate reductions, the limitation or avoidance of future rate increases, or such other means as the board may determine.

Miss. Code. Ann. § 77-5-235(5) (Rev. 2018). Plaintiffs contended that Southwest had unduly retained excess revenue as "new member equity," despite the excess funds not being necessary "to fund expenses, debt service or reserves . . . ."[2]

¶6.     Southwest filed a Renewed Motion to Compel Arbitration and Stay Proceedings, in which it argued that the matter should be decided by an independent arbitrator under its

---

[2] Southwest allegedly retained $45 million in excess revenue. Plaintiffs contend that Southwest had retained $13 million above the 30 percent asset-to-equity ration (safe harbor) prescribed by the Rural Utilities Service (RUS), a federal lending agency.

bylaws.[3] Southwest argued that arbitration was the appropriate avenue of resolving the dispute because a presumption favors arbitration, because the members agreed to be bound by the bylaws, and because the members directly benefitted from the contract by receiving electricity and capital credits from the cooperative.

¶7. Plaintiffs argued that they did not agree to arbitrate the dispute. Upon applying for electricity, each Plaintiff signed a one-page application for electricity. The application for electricity was the only document Plaintiffs signed with Southwest, and it made no mention of an arbitration provision. Additionally, Plaintiffs argued that because the mandatory arbitration provision contained in the bylaws directly conflicted with the nonmandatory provision in the same bylaws, the arbitration provisions were ambiguous and unenforceable. Plaintiffs further argued that Southwest owed a heightened duty to members of the cooperative to fully explain the terms of the contract Plaintiffs were signing, including the implication of arbitration. And lastly, Plaintiffs argued that the membership application was unconscionable.

¶8. The trial court granted Southwest's motion to compel arbitration, finding that the parties had entered into a valid arbitration agreement and that Plaintiffs had failed to meet their burden of proof as to unconscionability. The trial court found that the allegations in the complaint arose out of Southwest's bylaws and patronage capital and fell within the scope of the arbitration provision. The trial court stated that a strong public policy favors arbitration. Because Plaintiffs each signed a membership application, the trial court held that

---

[3] Southwest previously had filed a motion to compel arbitration in the federal district court before the case was remanded.

5

Plaintiffs had expressly agreed to be bound by the terms of Southwest's bylaws as amended from time to time. The trial court also found that Section 77-5-223 granted the board authority to amend the bylaws and that Plaintiffs had each reaped the benefits of their membership status with Southwest since signing the membership application.

¶9. Plaintiffs appealed and presented three issues for review:

1. Whether the trial court erred by finding that the parties entered into a valid arbitration agreement.

2. Whether the trial court erred by finding that the dispute fell within the scope of the arbitration provision.

3. Whether the trial court erred by finding that no external factors precluded arbitration in this matter.

The parties also submitted supplemental briefing at the direction of this Court.

¶10. This is the first of several similar cases, which appear to be class-action lawsuits,[4] that have been filed around the state of Mississippi against electric power cooperatives (also referred to as electric power associations). A similar case is now before this Court for review —***Delta Electric Power Association v. Archie Campbell***, No. 2019-CA-00206-SCT. Two other cases were before this Court—***Coast Electric Power Association v. Lakesha Butler***, No. 2018-CA-01728, and ***Dixie Electric Power Association v. William Willis***, No. 2019-CA-0000—but these cases were removed to federal court after the United States Court of Appeals for the Fifth Circuit held that the electric power cooperatives presented a

---

[4] The complaint identifies Plaintiffs to include "the Members 4-25,000 are members of Southwest Mississippi Electric Power Association who will be joined under Miss. R. Civ. P 19(a)(2)." Plaintiffs' response to the motion to compel arbitration opens, "Ray Virgil, et al., on behalf of himself and other members similarly situated ('Plaintiffs')."

colorable federal defense. ***Butler v. Coast Elec. Power Ass'n***, 926 F.3d 190 (5th Cir. 2019). There are also several similar cases at present pending before trial courts that have not yet been appealed but will be affected by the outcome of this litigation.[5]

## STANDARD OF REVIEW

¶11.    "In reviewing an appeal of an order compelling arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard, and we conduct a *de novo* review of all legal conclusions." ***Smith v. Express Check Advance of Miss., LLC***, 153 So. 3d 601, 605-06 (Miss. 2014) (footnotes omitted) (citing ***Ill. Cent. R.R. Co. v. McDaniel***, 951 So. 2d 523, 526 (Miss. 2006); ***Va. Coll., LLC v. Blackmon***, 109 So. 3d 1050, 1053 (Miss. 2013)).

¶12.    This Court has held that "[t]he party resisting arbitration must shoulder the burden of proving a defense to arbitration." ***Norwest Fin. Miss., Inc. v. McDonald***, 905 So. 2d 1187, 1193 (Miss. 2005) (citing ***Green Tree Fin. Corp.-Ala. v. Randolph***, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000)).

## ANALYSIS

¶13.    "In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry." ***E. Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002). "The first prong has two considerations: (1) whether there

---

[5] These cases, which were requests for admission pro hac vice, include ***Twin County Electric Power Association v. Thomas Simmons***, No. 2019-AC-00777 (pending in Washington County Circuit Court); ***Kimberly Harper v. Southern Pine Electric Cooperative***, No. 2018-AC-00838 (removed to federal court in ***Butler***, 926 F.3d at 201-02); ***Evelyn Swindell v. Twin County Electric Power Association***, No. 2018-AC-00463 (pending in Washington County Chancery Court); and ***Octavia Lewis v. Pearl River Valley Electric Power Association***, No. 2018-AC-00428 (pending in Pearl River County Chancery Court).

is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Id.* "Under the second prong, the United States Supreme Court has stated [that] the question is 'whether legal constraints external to the parties' agreement foreclosed arbitration of those claims.'" *Id.* (citing ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.***, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). "Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionablity may be asserted to invalidate the arbitration agreement without offending the [FAA]." *Id.* (citing ***Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

> I.      *Whether the trial court erred by finding that the parties entered into a valid arbitration agreement.*

¶14.    The Southwest Mississippi Electric Power Association was created and is governed by statute. *See* Miss. Code Ann. §§ 77-5-201 to -259 (Rev. 2018). Section 77-5-225 governs the "membership," and it provides,

> Except as hereinafter provided, the corporate purpose of a corporation shall be to render service to its members only. *Any person may become and remain a member if such person shall use energy supplied by such corporation and shall comply with the terms and conditions in respect to membership contained in the bylaws of such corporation*, which terms and conditions shall be nondiscriminatory. *Any person who shall agree to use energy supplied by the corporation* from an existing line or from a line the construction of which has been authorized or commenced by the corporation *may be admitted to membership in the corporation prior to such use upon complying with the other terms and conditions with respect to membership contained in the certificate of incorporation or in the bylaws*. The membership fee of the corporation shall be fixed by the board of directors.

Miss. Code Ann. § 77-5-225 (Rev. 2018) (emphasis added). Additionally, Section 77-5-

223(a) gives the board of directors the power "[t]o adopt and amend bylaws for the management and regulation of the affairs of the corporation." Miss. Code Ann. § 77-5-223(a) (Rev. 2018).

¶15.    In *The Door Shop, Inc. v. Alcorn County Electric Power Association*, 261 So. 3d 1099, 1104 (Miss. 2018), this Court found that a member of an electric power association "specifically and contractually agreed" to be bound by the association's bylaws by filling out the membership application. Under the bylaws, the board of directors was empowered "[t]o adopt and amend by-laws for the management and regulation of the affairs of [the power association]." *Id.* at 1105 (internal quotation marks omitted) (quoting Miss. Code Ann. §77-5-223(a)). Moreover, the board of directors "was at liberty to alter, amend, repeal, or adopt new bylaws so long as certain voting standards were satisfied." *Id.* This Court concluded that the power association's board of directors "acted pursuant to lawful authority" in amending the bylaws and that the member had notice of the board's power to do so. *Id.*

¶16.    Here, the membership application was signed by Plaintiffs. The membership application advised that members would be bound by the bylaws and that the bylaws could be amended by the elected board. Members received notice of bylaw amendments at every annual meeting and through the *Today in Mississippi* newspaper.

¶17.    According to *The Door Shop*, here, Plaintiffs' execution of the membership application "bound [them] to [Southwest's] bylaws." *Id.* at 1100. As in *The Door Shop*, the board "acted pursuant to lawful authority" in amending the bylaws, and Plaintiffs had notice of the board's power to do so. *Id.* at 1105. As a result, Southwest's bylaw amendment to

add the arbitration provision was legal and proper. Therefore, the trial court did not err by finding that the parties entered into a valid arbitration agreement.

¶18. Our analysis should end here—finding a legal and valid arbitration provision. But the dissent concludes that the Court should continue to review this case as a contractual agreement to determine whether the arbitration provision in the contractual agreement was unconscionable. Yet the Plaintiffs admit that this is neither a contract case nor a case involving contract interpretation. Indeed, the Plaintiffs acknowledge that "this case and controversy does not arise out of any contract" but instead "is based on violation of Mississippi statute . . . ." Because this is not a contract case or a case involving contract interpretation, any discussion regarding the contract defense of unconscionability is unnecessary. Nevertheless, we address the Plaintiffs additional arguments raised on appeal.

> II. *Whether the trial court erred by finding that this dispute fell within the scope of the arbitration provision.*

¶19. Plaintiffs argue that the underlying dispute, whether Southwest unduly retained excess revenues and receipts, does not fall within the scope of the arbitration provision set forth in the bylaws. Plaintiffs assert that they did not attach the bylaws to their complaint, file a breach-of-contract action, or utilize the bylaws in any way to support their cause of action. As a result, Plaintiffs claim that this dispute does not arise out of the bylaws but, instead, arises from Southwest's failure to comply with Mississippi Code Section 77-5-235. We disagree and find that Plaintiffs' dispute falls within the scope of the arbitration provision.

¶20. "Courts often characterize arbitration language as either broad or narrow." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006). "Broad arbitration language governs

disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract." *Id.* at 176 (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). "Because broad arbitration language is capable of expansive reach, courts have held that 'it is only necessary that the dispute "touch" matters covered by [the contract] to be arbitrable.'" *Id.* (alteration in original) (quoting *Pennzoil*, 139 F.3d at 1068).

¶21. Here, the arbitration provision states, in relevant part, "[a]ny controversy or claim arising out of or relating to these bylaws, or the breach thereof, or any controversy or claim arising out of or relating to patronage capital shall be resolved by binding arbitration . . . ." The arbitration provision uses broad language. As a result, all claims that touch matters covered by the parties' agreement must be arbitrated.

¶22. In their complaint, Plaintiffs claim that at the end of the 2016 fiscal year, Southwest held patronage capital equal to 42 percent of its assets, exceeding the industry's recommended 30 percent. Plaintiffs requested a refund of the excess patronage capital under Section 77-5-235. Thus, Plaintiffs' claims regarding excess patronage capital clearly touch matters covered by the parties' agreement.

¶23. Additionally, Section 77-5-235(5) states that "[r]evenues and receipts not needed . . . shall be returned to the members by such means as the board may decide . . . ." Section 8.03(a) of the bylaws addresses patronage capital in connection with furnishing electric energy and provides,

> In the furnishing of electric energy the Association's operations will be so
> conducted that all members will through their patronage furnish capital for the

11

Association.  All members acknowledge the need of the Association for capital received from members to operate.  In order to induce patronage and to assure that the Association is obligated to operate on a nonprofit basis, the membership has voted to vest in the Board of Directors, in its discretion and business judgment, the ability to allocate patronage capital to the accounts of members, rather than paying them in cash, for all amounts received and receivable from the furnishing of electric energy in excess of operating costs and expenses properly chargeable against the furnishing of electric energy.  All such amounts in excess of total operating costs and expenses at the moment of receipt by the Association are received with the understanding that they are furnished by members as capital credits.  The association may pay by credits for each member to a capital account on the books of the Association all such amounts in excess of operating costs and expenses.  The books and records of the Association shall be set up and kept in such a manner that at the end of the fiscal year the amount of capital, if any, so furnished by the member is clearly reflected and credited in appropriate records to the capital account of each member.

¶24.  Plaintiffs' dispute involves the board's allocation of patronage capital and touches on Southwest's bylaws.  Accordingly, the trial court did not err by finding that Plaintiffs' dispute fell within the scope of the arbitration provision.

III.    *Whether the trial court erred by finding that no external factors precluded arbitration in this matter.*

¶25.  Plaintiffs assert that the arbitration provision is both unconscionable and ambiguous.  We separately address each assertion.

A.    *Unconscionability*

¶26.  Plaintiffs argue that the arbitration provision constitutes a contract of adhesion and is procedurally unconscionable.  At the hearing, the chancellor recognized that "[t]he burden . . . of proving a contract of adhesion or unconscionability, that would certainly fall on the plaintiffs in this case, and they've not chosen to call any witnesses."  The chancellor determined that Plaintiffs presented no evidence or proof in support of their opposition to

arbitration. We agree.

¶27.    A contract of adhesion is one that is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis as to the weaker party who has no real opportunity to bargain about the terms." *Horton*, 926 So. 2d at 171 (internal quotation marks omitted) (quoting *Taylor*, 826 So. 2d at 716). In determining whether an arbitration provision is procedurally unconscionable, this Court considers: "1) lack of knowledge; 2) lack of voluntariness; 3) inconspicuous print; 4) complex legalistic language; 5) disparity in sophistication or bargaining power; 6) lack of opportunity to study the contract and inquire about the contract terms." *Id.* at 177 (citing *Taylor*, 826 So. 2d at 714). Lack of knowledge and lack of voluntariness are prominent indicators of procedural unconscionability. *Taylor*, 826 So. 2d at 716.

¶28.    Plaintiffs assert both a lack of knowledge and a lack of voluntariness regarding the arbitration provision. Regarding a lack of knowledge, Plaintiffs claim they had no notice of the arbitration provision. But Plaintiffs' argument directly contradicts this Court's decision in *The Door Shop*, in which the Court reviewed Section 77-5-223(a) and ruled that the electric power association's board of directors was authorized to adopt and amend the bylaws, that the members had notice of the board's power to do so, and that the board acted within its lawful authority. Here, as in *The Door Shop*, Southwest's board of directors was authorized to adopt and amend the bylaws, Plaintiffs had notice of the board's power to do so, and the board acted within its authority to amend the bylaws. While the arbitration provision was not included in the bylaws when Plaintiffs signed the membership application,

13

Plaintiffs knew that the bylaws could be amended. As the trial court properly noted, "[e]verybody knows bylaws can be changed." By executing the membership application, Plaintiffs agreed to be bound by the bylaws. Plaintiffs knew that the bylaws could be amended and received notice of the bylaw amendments at the annual meetings. Thus, Plaintiffs' lack-of-notice argument fails.

¶29. Plaintiffs further argue a lack of voluntariness in executing the membership application. Plaintiffs claim that the membership terms were nonnegotiable and that they had no other alternatives for electricity.

> The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and "the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."

*Taylor*, 826 So. 2d at 716 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). Here, the terms of membership in Southwest were not "unnegotiable."

¶30. Mississippi's statutory framework empowers Southwest's board of directors to "adopt and amend bylaws for the management and regulation of the affairs of the corporation." Miss. Code Ann. § 77-5-223(a). The directors are elected annually to a three-year term by members entitled to vote. Miss. Code Ann. § 77-5-221 (Rev. 2018). The directors must be members of the corporation. *Id.* Only members are allowed to participate in the election of directors to serve on the board. *Id.* Each member has one vote no matter how much electricity he or she uses, according to section 3.05 of Southwest's bylaws. All members are

14

"entitled to address the board at any regular meeting regarding any suggestions for better service, grievances or any other matter affecting the corporation." Miss. Code Ann. § 77-5-221.

¶31.    Under Mississippi statutes and Southwest's bylaws, the board is comprised of Southwest members, the members elect who among them serves on the board, and the members maintain the power to address individual grievances to the board at regular meetings. Thus, the statutes and bylaws ensure that the power to enact and amend terms of membership rests with the members of the cooperative. This ability of the members to alter the terms of membership through the methods of participation outlined in the statutes and bylaws makes the terms of membership negotiable. Thus, Plaintiffs lack-of-voluntariness argument is without merit.

¶32.    Additionally, Plaintiffs unconscionability argument singles out arbitration. In *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 342, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742 (2011), the United States Supreme Court held that the FAA may preempt a state unconscionability rule of general application if the rule disproportionately affects arbitration. The Court concluded, "[a]lthough [the FAA] § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.

¶33.    "The [FAA] . . . requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424, 197 L. Ed. 2d 806 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465, 193 L. Ed.

2d 365 (2015)). General contract defenses such as procedural unconscionability cannot be applied in such a way that targets or disproportionately impacts arbitration. *Id.* at 1428 n.2. In other words, any general state-law contract defense "must in fact apply generally, rather than single out arbitration." *Id.*

¶34. Plaintiffs' procedural-unconscionability argument singles out the arbitration provision for disfavored treatment, in violation of *Concepcion* and *Clark*. Plaintiffs do not argue that all of the bylaws, i.e., the entire membership agreement between the parties, are procedurally unconscionable. Instead, Plaintiffs single out the arbitration provision and argue that it is procedurally unconscionable. But if Mississippi's contract defense of procedural unconscionability is applied to target only the parties' arbitration provision, it will have a disproportionate effect on arbitration. Thus, while a valid arbitration provision governs this controversy, Plaintiffs' attempt to single out that arbitration provision as unconscionable violates *Concepcion* and *Clark*.

¶35. Moreover, all of Southwest's bylaws and amendments were adopted in the same way. Thus, assuming Plaintiffs were to prevail on their procedural-unconscionability argument, it would require this Court to invalidate all of Southwest's bylaws, not just the arbitration provision. Such invalidation of all of the bylaws would certainly not benefit Plaintiffs because if the entire membership agreement is procedurally unconscionable and unenforceable, then Plaintiffs would no longer be members of Southwest and would therefore lose standing to pursue their claims.

¶36. The trial court stated that it "heard no evidence" to support Plaintiffs' argument that

16

the arbitration provision was a contract of adhesion or was procedurally unconscionable. We agree and find no error by the trial court.

B.    *Ambiguity*

¶37.    Plaintiffs further argue that the arbitration provision in the bylaws is ambiguous and does not demonstrate a meeting of the minds. Specifically, Plaintiffs assert that one section of the bylaws specifies that a member *may* seek arbitration but that another section states that claims related to the return of patronage capital *shall* be resolved by arbitration. Plaintiffs argue that "[t]he arbitration provisions irreconcilably conflict with one another; thus, creating an ambiguity." We disagree.

¶38.    Section 8.03(k) of the bylaws, titled "Patronage Capital in Connection with Furnishing Electric Energy," provides,

> To the extent the membership disagrees with the decisions of the Board of Directors with respect to the allocation or retirement of capital credits, the member *may* seek arbitration pursuant to Section 11.05 of these Bylaws, but only after the member has first provided written notice to the Board of Directors at least fifteen (15) calendar days in advance of the next scheduled regular monthly Board meeting and provided the Board of Directors with a reasonable time to investigate and respond to the matter.

(Emphasis added.) Section 11.05, titled "Alternative Dispute Resolution," provides, "[a]ny controversy or claim arising out of or relating to these bylaws, or the breach thereof, or any controversy or claim arising out of or relating to patronage capital *shall* be resolved by binding arbitration . . . ." (Emphasis added.)

¶39.    "When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses." ***One S., Inc. v. Hollowell***, 963 So. 2d 1156, 1162 (Miss. 2007) (quoting

17

*Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005)). When read together, as a whole, sections 8.03(k) and 11.05 are not ambiguous. Section 8.03(k) simply states that before a member can seek arbitration under section 11.05, the member must first provide written notice to the board. Section 8.03(k) is not a separate, permissive arbitration provision. Instead, section 8.03(k) specifically refers to section 11.05, the mandatory arbitration provision. Thus, despite Plaintiffs' argument, the trial court did not err by finding that the arbitration provisions do not conflict and are not ambiguous.

**CONCLUSION**

¶40. We find that the parties entered into a valid arbitration agreement, that the parties' dispute falls within the scope of the arbitration agreement, and that no external factors preclude arbitration in this matter. Accordingly, we affirm the chancery court's judgment granting Southwest's renewed motion to compel arbitration.

¶41. **AFFIRMED.**

**COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. RANDOLPH, C.J., AND KITCHENS, P.J., NOT PARTICIPATING.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶42. I disagree with the majority's finding that the Plaintiffs presented no evidence in support of their opposition to arbitration. A court may invalidate an arbitration agreement based on unconscionability, "but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue[.]'" ***Kindred Nursing Ctrs. Ltd. P'ship v. Clark***, 137 S. Ct. 1421, 1426, 197 L. Ed. 2d 806 (2017) (quoting

18

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)). In finding arbitration provisions procedurally unconscionable, this Court considers "1) lack of knowledge; 2) lack of voluntariness; 3) inconspicuous print; 4) complex legalistic language; 5) disparity in sophistication or bargaining power; 6) lack of opportunity to study the contract and inquire about the contract terms." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006) (citing *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002)). Generally, procedural unconscionability is shown by lack of knowledge and lack of voluntariness. *Taylor*, 826 So. 2d at 716.

¶43. Although the majority concludes that the analysis should end at finding a legal and proper arbitration provision, this Court, on its own motion, requested that the parties submit supplemental briefing on whether Southwest had waived delegation of arbitrability by not asserting it in the trial court and instead arguing the merits of arbitrability. In its supplemental brief, Southwest admitted that "it did not seek to enforce the delegation clause in the trial court . . . ." Instead, Southwest submitted to the trial court the merits of arbitrability, including both the validity and infirmities. Because Southwest chose to submit the merits of arbitrabilitly to the trial court, we must now determine whether the arbitration provision should be invalidated based on any infirmities, including unconscionability.

¶44. I would find that the Plaintiffs demonstrated both a lack of knowledge and a lack of voluntariness. First, the arbitration provision at issue was not included in the bylaws when Plaintiffs signed the membership agreement stating they would be bound by the bylaws. Although the membership agreement stated that the bylaws could be amended from time to

19

time, Plaintiffs were not notified that the bylaws were being amended to include an arbitration agreement until after the amendment had already occurred. As Kevin Bonds stated in his affidavit, "[m]embers receive notice of *Bylaw amendments* at annual meetings of the members and through the Today in Mississippi newspaper." (Emphasis added.) Accordingly, Southwest's members had no notice that the bylaws were amended to include an arbitration agreement until *after* the arbitration agreement had already been entered into the bylaws. While the bylaws may be amended by Southwest's board, the board does not have unlimited authority in making those amendments.

¶45.    Moreover, contracts of adhesion are "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 615 (Miss. 2014) (internal quotation marks omitted) (quoting *Taylor*, 826 So. 2d at 716). The

> fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and "the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."

*Taylor*, 826 So. 2d at 716 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). I would find that the arbitration provision contained in the bylaws created a contract of adhesion. "[P]ublic utilities are monopolies engaged in the business of furnishing necessary services to the public . . . ." *Miss. Pub. Serv. Comm'n v. Miss. Power Co.*, 429 So. 2d 883, 886 (Miss. 1983).  Electricity is a basic need that could be furnished

20

from no company other than Southwest.[6] Thus, Southwest had a monopoly on electricity in the area, not by happenstance, but by a government-enforced monopoly. Because Southwest has a monopoly on electricity, a necessary service, and was the sole provider of electricity in its designated areas, the Plaintiffs had no opportunity to contract with another utility provider to obtain electricity.[7] The Plaintiffs in this case could not simply decline to accept the arbitration provision by terminating their membership with Southwest.

¶46.     No reasonable alternative existed for Plaintiffs to receive electricity. Southwest argues that Plaintiffs had other options for receiving energy such as solar panels or generators. However, as Plaintiffs argue, solar panels and generators are not *reasonable* alternatives for the average Mississippian. Southwest cites ***Fourth Davis Island Land Co. v. Parker***, 469 So. 2d 516, 521 (Miss. 1985), a case involving a power-line dispute in which this Court stated that "[w]e are not holding that electricity is not a necessity, but the means by which it is

_____

[6]*See **Miss. ex rel. Hood v. Entergy Miss., Inc.**, No. 3:08CV780 HTW-LRA, 2012 WL 3704935, at *7 (S.D. Miss. Aug. 25, 2012) ("In this case, the State of Mississippi unquestionably has an interest in the regulation of the retail, intrastate utility market and in the protection of its citizens from illegal over-billing for a basic necessity such as electricity.").

[7]As Representative Jim Cooper stated,

America's 930 electric co-operatives are the sole source of electricity for homes, farms, and businesses for parts of 47 states. . . . [D]istribution co-ops ("co-ops") simply resell and deliver electricity to retail customers across the crucial "last mile" between the national electric power grid and the co-op members that ultimately use that electricity. Nationwide electrification is considered by engineers to be the greatest accomplishment of the twentieth century. It is hard to imagine life without it.

Representative Jim Cooper, *Electric Co-Operatives: From New Deal to Bad Deal?*, 45 Harv. J. on Legis. 335 (2008) (footnote omitted).

furnished to the Fourth Davis property is one for which a substitute could be furnished by reasonable labor and expense." The *Parker* case can be distinguished. The property involved in that dispute was located on a remote island and was used primarily for hunting camps. *Id.* at 522. In fact, it was undisputed that no person permanently resided at the Fourth Davis dwellings. *Id.* Moreover, the members of Fourth Davis testified that "cooking was achieved in part by butane and wood-powered sources." *Id.* In conclusion, this Court held that "the power line was not reasonably necessary since an alternative would not involve disproportionate expense and inconvenience." *Id.* at 522.

¶47. This case presents completely different facts. Plaintiffs here reside in the area in which Southwest is the sole electricity provider. Additionally, no testimony indicated that Plaintiffs or anybody else in the district cooked by butane or wood-powered sources. It would be wholly unreasonable for Plaintiffs to be expected to do so on any long term basis. Thus, unlike in *Parker*, electricity is reasonably necessary for Plaintiffs and an alternative would likely involve disproportionate expense and inconvenience.

¶48. In addition, Plaintiffs had no opportunity to opt out of the arbitration provision. In *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 826 (S.D. Miss. 2001), under its membership agreement, Bank One sent a notice to each of its cardmembers stating that the cardmember agreement would be amended to add an arbitration provision. Cardmembers were given the option to reject the arbitration provision within a certain period of time. *Id.* Absent objection, the notice stated the arbitration provision would become effective after that period of time. *Id.* The court upheld the arbitration agreement, finding probative that Bank

One had sent a notice to each of its cardholders before the amendment took place and had given the cardholders an opportunity to reject the arbitration provision. *Id.* at 831. The court also emphasized that the notice did not address several amendments but rather "addressed the singular topic of the arbitration clause, and began with the heading 'IMPORTANT NOTICE.'" *Id.* at 833. Similarly, in ***Beneficial National Bank, U.S.A. v. Payton***, 214 F. Supp. 2d 679, 683 (S.D. Miss. 2001), Beneficial National Bank sent a notice to each of its cardholders stating that a mandatory arbitration provision was being added to the agreement unless the cardholder rejected the change. The court upheld the arbitration provision, stating that the notice had specifically informed the plaintiff of his right to opt out of the arbitration provision. *Id.* at 687.

¶49.    Unlike in ***Coates*** and ***Payton***, Southwest gave no notice before including the arbitration provision in the bylaws. Southwest also gave its members no opportunity to opt out of the arbitration provision. And opting out of receiving electricity also was not an option because electricity is a basic necessity. In order to receive a basic necessity, the members of Southwest were simply bound to the amendment without notice or choice. Thus, I would find that the procedures Southwest used in this case lacked agreement and were unconscionable.

¶50.    The Plaintiffs cite ***McCreary v. Liberty National Life***, and its holding that the parties to an insurance policy had not agreed to arbitrate their disputes. There, the court found probative that

> [t]he application was the only document plaintiff ever signed; there is, of course, no mention in its contents of the arbitration endorsement. That endorsement is part of the insurance contract which plaintiff received upon completion of the application process. When plaintiff received the policy, she

23

was given the option of "return[ing] it for any reason," in which case, the policy was "void from the beginning . . . ." There was no notice, no discussion, and no negotiation of the arbitration endorsement, circumstances, which, in this court's view, hardly signify either agreement or waiver.

*McCreary v. Liberty Nat. Life*, 6 F. Supp. 2d 920, 921 (N.D. Miss. 1998) (second alteration in original). The court found that the arbitration endorsement was unenforceable and ordered the matter to proceed in court. *Id.* This case presents similar facts. Southwest had all the bargaining power in this case. Before receiving electricity, a basic necessity, Plaintiffs were required to sign the one-page membership agreement under which Plaintiffs were bound by the provisions of the bylaws, which could be amended from time to time. Plaintiffs had no opportunity to negotiate the terms of the arbitration provision and were not provided with a copy of the bylaws before signing the membership agreement. And while Plaintiffs did sign the membership agreement agreeing to be bound by the bylaws that may be amended from time to time, Mississippi Code Section 77-5-223(a) (Rev. 2018) requires those amendments to be consistent with law.

¶51. The trial court found probative that the members of Southwest elect the board of directors. However, the board of directors selects the nomination committee that determines the candidates who will be voted on to be a director. The nomination committee gathers suggestions and then determines the members who will be voted onto the board. Should the members wish to nominate an individual that the nomination committee does not include on its list, under the bylaws, section 4.04(b), they may do so only by a petition with fifty members' signatures, addresses, account numbers, and service locations. Therefore, the individual members of Southwest are limited in their choices for the board of directors.

¶52. I find no merit in the majority's contention that the Plaintiffs' argument directly contradicts this Court's decision in *The Door Shop, Inc. v. Alcorn County Electric Power Association*, 261 So. 3d 1099, 1104 (Miss. 2018). *The Door Shop* involved the retroactivity of an amendment to the bylaws to recover underbilling. *Id.* The issues of arbitration and unconscionability were not raised or discussed in that case. Because *The Door Shop* has no bearing on the issues raised here, I disagree with the majority's conclusion that the Plaintiffs' lack of notice argument failed.

¶53. Market factors and regulatory constraints created a great disparity in bargaining power. Because electricity is a basic need, the Plaintiffs in this case could not simply decline to accept the arbitration provision by terminating their membership with Southwest. The Plaintiffs had no reasonable alternative to receive electricity; therefore, Southwest retained all of the bargaining power. The right "to seek redress in a court of competent jurisdiction . . . . is among our most cherished rights . . . ." *Robertson v. J.C. Penney Co., Inc.*, 484 F. Supp. 2d 561, 568 (S.D. Miss. 2007). Because Plaintiffs had no opportunity to bargain regarding arbitration, I would find that the arbitration provision created a contract of adhesion and was procedurally unconscionable. Therefore, I dissent from the majority's finding that the arbitration provision was valid and enforceable.